No. 22750.

HELEN K. PATTERSON AND HELEN ROBERTSON *v.* DONNA PITONIAK AND JOSEPH PITONIAK, AS GUARDIANS IN THE ESTATE OF EARL C. PERSON, WARD.
(480 P.2d 579)

Decided February 1, 1971.

ARTHUR W. ZARLENGO, for plaintiff in error Helen K. Patterson.

EDWARD JERSIN, for plaintiff in error Helen Robertson.

F. RICHARD HITE, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

PLAINTIFFS in error, Helen Patterson and Helen Robertson, appealed to the district court the denial by the county court of claims for salary and overtime allegedly due them from the Estate of Earl C. Person. The district court, after a trial de novo, likewise denied their claims. The matter is here for review upon writ of error.

The plaintiffs' claims are based upon services rendered as employees of the Toll Gate Bar, a tavern owned and operated by Earl Person during the years 1958 to 1962.

During the year 1962, Person suffered an illness which caused him to file a verified petition as a mentally *competent* person for the appointment of Joseph Pitoniak and Donna Pitoniak as guardians of his estate, pursuant to C.R.S. '53, 152-9-17, as amended by the laws of 1961 (now 1965 Perm. Supp., C.R.S. 1963, 153-9-13). The Pitoniaks were duly appointed.

The guardians at all steps in the proceedings have objected to the claims of both parties. At the hearing on the claims before the county court, the claimants offered in evidence the records of the Toll Gate Bar to prove that their claims had not been paid. Objection to the admission into evidence of these records was made on the grounds that no proper foundation had been laid for their introduction under the "shop-book rule." C.R.S. 1963, 154-1-3.

Objection was also made to the testimony of each claimant in support of her own claim as well as the testimony of each claimant in behalf of the other on the ground that such testimony would contravene the provisions of the so-called Dead Man's Statute. C.R.S. 1963, 154-1-2. The court sustained the objection, stating,

"* * * Well, the court feels that unless there is some evidence submitted here showing that he is capable to testify and provide a defense here, that this particular dead man statute is designed to protect people suffering under a disability and for that reason it is applicable.

"Now, if you have got some medical evidence here which would indicate that this man can defend himself here in this particular situation, it might lend some weight to your particular offer. Although I think the law as it is written would even preclude the court from hearing this particular witness."

The court denied the claims. Subsequently, however, the court granted, in part, motions for new trial to permit each claimant to testify for the other claimant. However, the court on the second trial adherred to its previous ruling, refusing to admit the records into evidence, struck

the testimony of the claimants on behalf of each other on the ground that it was not the best evidence, and again denied the claims.

## I.

### The Dead Man's Statute

The first issue is the applicability of the Dead Man's Statute to a voluntary estate proceeding under C.R.S. '53, 152-9-17 (now 1965 Perm. Supp., C.R.S. 1963, 153-9-13). The issue appears to be one of first impression in this jurisdiction. Neither party has called our attention to any precedents on this precise question. Consequently, our answer must be found in the language of the statutes.

The so-called Dead Man's Statute provides in pertinent part:

"154-1-2. *Party in interest may not testify, when.* — (1) No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein, of his own motion, or in his own behalf, by virtue of section 154-1-1, when any adverse party sues or defends as the trustee or conservator of an idiot, lunatic or distracted person, \* \* \*."

154-1-2 is a limitation on 154-1-1 which permits, with certain exceptions, "all persons" who have an interest in the event of an action to be witnesses.

The limitation of 154-1-2 is rather definitively spelled out so far as material here. It proscribes testimony by a person directly interested when the "adverse party sues or defends as the trustee or conservator of an *idiot, lunatic or distracted person.*" As previously noted, the ward was a mentally competent person. It should also be noted that he could, on his own application, have terminated the guardianship at any time. 1965 Perm. Supp., C.R.S. 1963, 153-9-13.

Mr. Person, the ward, so far as the record discloses, is not "an idiot, lunatic or distracted person," nor has he been adjudicated an incompetent. Thus, by definition, the so-called Dead Man's Statute does not include Mr. Person within its terms. Consequently, the personal

representatives of Mr. Person cannot use 154-1-2 as a shield.

The claimants have questioned the constitutionality of the Dead Man's Statute under both Colorado and federal constitutional provisions. In view of the conclusion set forth immediately above, we do not reach the constitutional issues.

## II.

The second issue raised relates to the "shop-book rule," codified as C.R.S. 1963, 154-1-3. It reads:

*"Book Account, How Identified. —* When in any civil action, suit or proceeding, the claim or defense is founded on a book account, any party or interested person, association or company, may testify to his or their account book and the items therein contained; that the same is a book of original entries, and that the entries therein were made, by himself or his employee and are true and just; or that the same were made by a deceased person, or by a disinterested person, a nonresident of the state, at the time of the trial, and were made by such employee, deceased or nonresident person in the usual course of trade, and of his duty or employment to the party so testifying; and thereupon the said account book and entries shall be admitted as prima facie evidence in the case upon the matters as shown by said account book."

■■ The object of the statute is to enable a party to use his own books as evidence in his own behalf. When the party seeks to use his own books, it is incumbent upon him, as a condition precedent to their admission into evidence, to show that the book contains *original entries; that the entries* therein *were made by himself or his employee;* that they *are true* and *just;* and that they *were made in the usual course of trade.* For a summary of the shop-book rule, see 5 *J. Wigmore, Evidence* § 1518; *C. McCormick, Law of Evidence* § 281 *et seq. Radtke v. Taylor,* 105 Ore. 559, 210 P. 863. *See also Davie v. Lloyd,* 38 Colo. 250, 88 P. 446.

On retrial, the ordinary rules of evidence should be applied to the admissibility of evidence.

The judgment of the trial court is reversed and the cause is remanded for a new trial.

Mr. Justice Day, Mr. Justice Hodges, and Mr. Justice Groves concur.